Filed 9/24/13  P. v. Shepard CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>VERNON D. SHEPARD,<br><br>        Defendant and Appellant.<br>_____<br><br>In re<br><br>        VERNON D. SHEPARD,<br><br>            on Habeas Corpus. | B242135<br>(Super. Ct. No. BA378645)<br><br><br><br><br><br><br><br><br><br>B244346<br>(Super. Ct. No. BA378645) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William C. Ryan, Judge.  Judgment of conviction affirmed.

ORIGINAL PROCEEDING on petition for writ of habeas corpus.  William C. Ryan, Judge.   Writ granted and matter remanded for resentencing.

James Koester, under appointment by the Court of Appeal, for Defendant, Appellant and Petitioner.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul Roadarmel, Jr., and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

An information, filed on December 30, 2010, charged Vernon D. Shepard with one count of willful infliction of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a) (count 1))[1] and one count of contempt of court (§ 166, subd. (c)(1) (count 2)). The information specially alleged that Shepard had a prior conviction for voluntary manslaughter that qualified as a strike under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and had served two prior prison terms within the meaning of section 667.5, subdivision (b).

After trial, the jury found Shepard guilty on both counts. In a bifurcated proceeding, Shepard admitted that he had a prior conviction for voluntary manslaughter for purposes of sentencing under the Three Strikes law. He also admitted that the voluntary manslaughter conviction and a conviction for violation of Health and Safety Code section 11350 qualified him for sentencing under section 667.5, subdivision (b). The trial court sentenced Shepard to a state prison term of six years, consisting of the low term of two years for corporal injury, doubled pursuant to the Three Strikes law, plus two years under section 667.5, subdivision (b), for prior prison terms.

On appeal, Shepard contends that reversal of the judgment on count 1 is required because (1) admission of certain statements by the victim to a police officer regarding a prior incident of uncharged domestic violence constituted a prejudicial violation of his constitutional right to confrontation of witnesses; (2) the trial court prejudicially erred by failing to instruct the jury on battery on a cohabitant (§ 243, subd. (e)(1)), a lesser included offense of willful infliction of corporal injury on a cohabitant; (3) the court erred by failing to give a unanimity instruction; and (4) CALCRIM No. 852, under which the court instructed the jury, is unconstitutional. We disagree with Shepard's contentions. In a petition for a writ of habeas corpus, which we consider in conjunction with the appeal, Shepard contends that he was subject to punishment for only one enhancement under section 667.5, subdivision (b), because abstracts of judgment demonstrate that he served only one prior prison term for the two alleged prior convictions. We agree with

---

[1] Statutory references are to the Penal Code unless otherwise noted.

2

Shepard that he should be punished for only one prior prison term enhancement and thus grant his petition for a writ of habeas corpus and remand the matter for resentencing.

**DISCUSSION**

1. *Shepard Did Not Suffer a Prejudicial Violation of His Constitutional Right to Confrontation Requiring Reversal of the Judgment on Count 1*

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" (*Crawford v. Washington* (2004) 541 U.S. 36, 42.) "[T]his provision bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" (*Davis v. Washington* (2006) 547 U.S. 813, 821.) "Only [testimonial] statements . . . cause the declarant to be a 'witness' within the meaning of the Confrontation Clause. [Citation.] It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." (*Ibid.*) "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Id.* at p. 822, fn. omitted.) "'Confrontation clause violations are subject to federal harmless-error analysis . . . .' [Citation.] We ask whether it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error. [Citation.]" (*People v. Loy* (2011) 52 Cal.4th 46, 69-70, citing *Chapman v. California* (1967) 386 U.S. 18, 24.)

In connection with the charge of willful infliction of corporal injury on a cohabitant, the People introduced evidence under Evidence Code section 1109, subdivision (a)(1), of three prior uncharged reports of domestic violence by Shepard

3

against the victim, his cohabitant and the mother of his children.[2]  One of the prior uncharged reports of domestic violence involved an incident on December 3, 2004.  According to the evidence, on that day, at approximately 8:45 a.m., the police arrived at the home where Shepard lived with the victim in response to a battery, domestic violence radio call.  One officer knocked on the door, and the victim answered, stating, "'He's in here.  He's in here.  I called the police.'"  She pointed to a man inside the house, who was determined to be Shepard.  To deal with the "tactical situation," the officer detained Shepard and placed him in handcuffs.  The victim told the officer that Shepard "had assaulted her."  "She was very excited.  [The officer] remember[ed] her talking very fast, very animated."  She told the officer "that she was pushed.  [Shepard] had used both hands and pushed her, struck her chest area and caused her to fall back onto a bedroom door."  The victim had asked Shepard to leave and he yelled at her and grabbed her wrist.  The victim broke out of the grasp, ran out of the house and called 911.  She apparently returned to the house before the officer arrived.  The officer did not see any visible injuries on the victim but observed a crack of approximately two feet on the bedroom door.

Shepard contends that admission of certain evidence with respect to the December 3, 2004 incident violated his right to confrontation because the victim did not testify at trial and some of her hearsay statements to the officer were testimonial in nature.  According to Shepard, he "is not contesting whether [the victim's] initial statements that '[h]e's in []here, he's in []here,' are testimonial.  He is only arguing that the statements that [the victim] made after [he] had been taken into custody and [the victim] was then asked questions and described the facts of the alleged assault were testimonial for Confrontation Clause purposes."  Even if the statements the victim made to the officer after Shepard had been handcuffed were testimonial in nature, and thus their

_____

[2]  Evidence Code section 1109, subdivision (a)(1), provides in relevant part that, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [s]ection 1101 if the evidence is not inadmissible pursuant to [s]ection 352."

admission violated his right to confrontation, "it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error. [Citation.]" (*People v. Loy*, *supra*, 52 Cal.4th at pp. 69-70.)

The evidence relating to the charge of willful infliction of corporal injury on a cohabitant demonstrates that, on November 30, 2010, the victim's son called 911 and reported domestic violence. A police officer and his partner arrived at the home the victim shared with Shepard and her children, announced their presence at the front door and received no response. The officer reported that they "hear[d] a struggle from the inside of the house. . . . It sounded like there were running people, running inside, and then it sounded like someone was being slammed." The officer heard a female voice screaming. After requesting additional units, the officer and his partner jumped a fence and went down a walkway to the rear of the house, identifying themselves and giving commands to open the back door. "That's when in the back [they] hear[d] glass shattering inside of the house" along the walkway. Simultaneously, they heard a female again screaming. "Right after [they] hear[d] the glass shatter, shortly after, immediately after, a woman runs to the back where [they] were at, the rear entrance, and opens the door for [them]." She exited the house with her children, "appear[ing] to have blood on her face coming out of her lip, and . . . her hand had blood on it." The victim told officers that "she had gotten home with her kids; and, apparently, . . . Shepard, was home. He had been drinking. He seemed to be upset for her coming home so late. After the kids fell asleep, he just became angry and started hitting her, just pulled her by the hair, dragged her around the house, and then he covered her . . . mouth with his hands to prevent her from screaming. After he did that, he slammed her a few times on the face, causing her the injury she has on her lip. . . . [H]e was trying to put her head through the glass window . . . , and . . . she said she was able to put her hand up . . . as she's being pushed to the window, she puts it up and her hand goes through the window[,] which causes the injury on her hand."

Although the victim changed her story at the preliminary hearing, stating that Shepard did not cause her injuries and that she fell because she had been drunk, her

5

statement to the officer at the scene was consistent with what the officer and his partner heard and saw when they responded to the domestic violence 911 call. Evidence also establishes that Shepard called the victim on December 15, 2010 and told her "if you're not even so much there. Be somewhere else though where there's no you know contact whatsoever. Until this is . . . you know because without ya'll it's a wrap. Period. Without ya'll it's a wrap."

In addition to the evidence regarding the charged violation, other evidence of prior uncharged domestic violence, about which Shepard does not complain, demonstrates that, on November 22, 2004, the victim called 911 and reported that Shepard had his "hand around [her] neck . . . ." And, on September 9, 2009, a police officer responded to the victim's home and observed her with a swollen eye, discolored lower lip and bruised arm. "She stated that [Shepard] [had] punched her in the face and grabbed her and thr[own] her down on the floor." The officer heard Shepard yell at the victim "to tell [the police] the truth that he did not punch her in the face," and the victim recanted her prior statement.

Given the strong evidence regarding the charged violation of section 273.5, subdivision (a), and the evidence of prior uncharged domestic violence about which Shepard does not complain, the trial court's failure to exclude any testimonial statements by the victim on November 30, 2004 beyond a reasonable doubt did not prejudice Shepard.

2.    *The Trial Court Was Not Required to Sua Sponte Instruct on the Lesser Included Offense of Battery on a Cohabitant*

The trial court must instruct the jury, whether sua sponte or on the defendant's request, on a lesser included offense "'"when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) Battery of a cohabitant is a lesser included offense of willful infliction of corporal injury on a cohabitant. (*People v. Jackson* (2000) 77 Cal.App.4th 574, 580.) Willful infliction of corporal injury on a cohabitant contains

6

the additional element that the defendant's direct application of force to the victim caused injury to the victim. (*Ibid.*)

Shepard contends that the trial court was required to sua sponte instruct the jury on the lesser included offense of battery of a cohabitant based on the victim's preliminary hearing testimony (admitted at trial) that Shepard did not cause the injuries to her lip and hand on November 30, 2010 and that, because of her intoxicated state, she hurt her hand by hitting and breaking the window when she was angry and split her lip "'[f]rom [her] falling, acting all drunk and stupid . . . .'" Shepard maintains that, based on the testimony, "the jurors could reasonably have concluded that[,] although [he] assaulted [the victim] when he pulled her around by her hair or slapped her face, the traumatic injuries to [the victim's] lip and hand were caused by [the victim] herself when she either stumbled or thrust her head into the window as a result of her anger and intoxicated state."

The problem with Shepard's argument is the victim testified that she and Shepard had no altercation on November 30, 2010. She denied telling police officers that Shepard had dragged her around the house by her hair and that he had pushed and slapped her. According to the testimony, therefore, Shepard did not pull the victim's hair, slap her face or otherwise touch her, as is necessary to his argument that the trial court should have instructed on the lesser included offense of battery on a cohabitant. In other words, if the jurors believed the testimony, they would have concluded that Shepard had committed no crime at all, not that he had committed the lesser included offense of battery on a cohabitant. No substantial evidence thus supported an instruction on the lesser included offense of battery on a cohabitant, and the trial court was not required to give one.

3.    *The Trial Court Did Not Err By Failing to Give a Unanimity Instruction*

A criminal defendant's right to a jury trial includes the right to a unanimous verdict, including unanimous agreement on the act constituting the charged offense. (Cal. Const., art. I, § 16; *People v. Collins* (2001) 26 Cal.4th 297, 304.) As a result, "'"when an accusatory pleading charges a single criminal act and the evidence shows

7

more than one such unlawful act, either the prosecution must select the specified act relied upon to prove the charge or the jury must be instructed . . . that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. [Citations.]' [Citation.]" (*People v. Moore* (1986) 185 Cal.App.3d 1005, 1014, italics & fn omitted; see also *People v. Beardslee* (1991) 53 Cal.3d 68, 93.) When required under the facts, even if not requested, a unanimity instruction must be given by the court sua sponte. (*Moore*, at p. 1014.) "Neither instruction nor election [is] required, however, if the case falls within the continuous course of conduct exception. This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time." (*People v. Thompson* (1984) 160 Cal.App.3d 220, 224.)

Shepard contends the trial court was required to give a unanimity instruction because "the prosecution offered two distinct and separate incidents of alleged battery as the basis for the inflictions of the two distinct injuries that formed the basis of the traumatic condition element of the . . . section 273.5, subdivision (a)[,] offense: [Shepard's] slapping [the victim's] face, which caused the traumatic injury to her lip, and [Shepard's] trying to push [the victim's] head through the window[,] which caused the injury to her hand." We disagree. Contrary to Shepard's contention, the prosecutor did not separate the injury to the victim's lip from the injury to her hand in arguing for a conviction based on a violation of section 273.5, subdivision (a). The evidence demonstrates that the injuries to the victim's lip and hand were based on acts so closely connected, namely Shepard's hitting the victim and then attempting to push her through the window, that they occurred during one transaction. Thus, the continuous course of conduct exception applies, rendering a unanimity instruction unnecessary.

4. *Shepard Is Not Entitled to Reversal of the Judgment on Count 1 Based on an Unconstitutionality Argument as to CALCRIM No. 852*

Shepard contends that he is entitled to reversal of the judgment because CALCRIM No. 852, under which the trial court instructed the jury regarding evidence of prior uncharged domestic violence, is unconstitutional. According to Shepard, the instruction violates due process by lessening the People's burden of proof beyond a reasonable doubt.[3] Shepard recognizes that the Supreme Court in *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*) rejected a constitutionality challenge to CALJIC No. 2.50.01, which involves uncharged prior sexual assault, and concedes that instruction is analytically identical to CALCRIM No. 852. He also acknowledges that courts of appeal have determined that *Reliford* applies equally to CALCRIM No. 852. (*People v. Johnson* (2008) 164 Cal.App.4th 731; *People v. Reyes* (2008) 160 Cal.App.4th 246.) We of course are bound by *Reliford*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[3] The trial court instructed under CALCRIM No. 852, "The People presented evidence that the defendant committed domestic violence that was not charged in this case[.] [¶] Domestic violence means abuse committed against an adult who is a spouse, cohabitant, or person with whom the defendant has had a child. [¶] Abuse means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else. [¶] The term cohabitant has been defined in other instruction. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit corporal injury resulting in a traumatic condition as alleged in Count 1. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged crime. . . . The People must still prove each charge beyond a reasonable doubt. [¶] Do not consider this evidence for any other purpose."

Shepard nevertheless maintains that the Supreme Court in *Reliford* did not consider CALJIC No. 2.50.01 within the totality of all instructions, particularly instruction on circumstantial evidence. In upholding the constitutionality of CALJIC No. 2.50.01, however, the Supreme Court specifically noted that the instruction did not suggest the People could prove the charged crime by a standard less than proof beyond a reasonable doubt in part because "the jury [also] was told that circumstantial evidence could support a finding of guilt of the charged offenses only if the proved circumstances could not be reconciled with any other rational conclusion (CALJIC No. 2.02)—which is merely another way of restating the reasonable-doubt standard. [Citation.] The jury thus would have understood that a conviction that relied on inferences to be drawn from defendant's prior offense would have to be proved beyond a reasonable doubt." (*Reliford*, *supra*, 29 Cal.4th at p. 1016.) Contrary to Shepard's contention, therefore, the Supreme Court considered CALJIC No. 2.50.01 in the context of instruction on circumstantial evidence and, in fact, concluded that one of the circumstantial evidence instructions buttressed its rejection of the constitutionality challenge to CALJIC No. 2.50.01. Although the Supreme Court did not mention CALJIC Nos. 2.00 and 2.01, the circumstantial evidence instructions to which Shepard refers, those instructions, along with CALJIC No. 2.02, as discussed in *Reliford*, reinforce the principle that a conviction based on circumstantial evidence must be by proof beyond a reasonable doubt. As a result, no merit exists to Shepard's attempt to avoid *Reliford* based on the circumstantial evidence instructions.

In addition, Shepard maintains that CALCRIM No. 852 conflicts with United States Supreme Court authority, including *Boyd v. United States* (1892) 142 U.S. 450, requiring use of a limiting instruction when the jury considers evidence of prior criminal conduct or bad acts. CALCRIM No. 852, however, contains such a limiting principle by, as the trial court here instructed, telling jurors, "Do not consider this evidence for any other purpose." Thus, the instruction limits use of evidence of uncharged prior domestic violence so as not to infringe on the principles articulated in the United States Supreme Court authority cited by Shepard.

10

In his reply brief, Shepard contends that, even if *Reliford* is proper in the context of uncharged prior sexual assault, it should not be applied to uncharged prior domestic violence. As Shepard acknowledges, however, the instructions regarding uncharged prior sexual assault and uncharged prior domestic violence are analytically identical for constitutionality purposes, and the appellate courts have so held. (E.g., *People v. Johnson*, *supra*, 164 Cal.App.4th at pp. 739-740 [*Reliford* applies to case involving uncharged prior domestic violence because "Evidence Code sections 1108, allowing admission of evidence of uncharged sexual offenses, and 1109, allowing admission of evidence of uncharged domestic violence, are 'virtually identical[,]'" as are jury instructions on those statutes]; *People v. Pescador* (2004) 119 Cal.App.4th 252, 261 [applying *Reliford* in domestic violence case as, "[f]or the purposes of evaluating the constitutional validity of the instructions [pertaining to uncharged prior sexual assault and uncharged domestic violence], there is no material difference between CALJIC No. 2.50.01 and CALJIC No. 2.50.02"].) Shepard provides no basis for us to deviate from this authority.

5.     *Shepard Should Receive Only One Prior Prison Term Enhancement*

In a habeas corpus petition accompanying his appeal, Shepard contends that he received ineffective assistance of counsel in connection with his admission of his prior convictions within the meaning of section 667.5, subdivision (b). According to Shepard, his defense counsel did not adequately investigate his prior convictions because abstracts of judgment demonstrate that he served one, not two, prison terms for his prior convictions for voluntary manslaughter and violation of Health and Safety Code section 11350 and thus was subject to one, not two, prior prison term enhancements under section 667.5, subdivision (b). Shepard asks us to remand for resentencing without imposition of the second prior prison term enhancement.

The People do not dispute that the abstracts of judgment establish that Shepard served only one prior prison term but contend that he did not prove ineffective assistance of counsel or that any lesser prison term is warranted under the circumstances of the case and the probation report, which identified six aggravating and no mitigating factors.

11

The People request that we leave the sentence as is at six years, which is the length of sentence defendant argued for in the trial court, or remand for resentencing so that the trial court can impose a seven-year sentence, consisting of the mid-term of three years, doubled pursuant to the Three Strikes law, plus one year for the prior prison term enhancement.

We need not determine whether Shepard's counsel was ineffective in connection with Shepard's admission of his prior convictions. (See *In re Brown* (2013) 218 Cal.App.4th 1216, 1223["[d]efense counsel's duty to investigate extends to prior conviction allegations that, if proven, may increase the defendant's sentence. Thus, '[w]henever a sentenced is enhanced . . . due to a prior conviction, it is counsel's obligation to examine the validity of the prior or underlying conviction'"].) Because the abstracts of judgment show that he served only one prior prison term within the meaning of section 667.5, subdivision (b), we conclude that imposition of two prior prison term enhancements was unauthorized, even though the total six-year term is within the range of a lawful sentence. We remand the matter for resentencing. Although Shepard maintains that, if the trial court resentences him, it may not impose a prison term greater than the six years he originally received, that issue is not now before us. On remand, the trial court may impose the sentence it determines is proper under the circumstances of the case, given that Shepard is subject to only one prior prison term enhancement under section 667.5, subdivision (b). After resentencing, if Shepard believes his sentence is improper, he of course may appeal.

## DISPOSITION

On the appeal, the judgment as to Shepard's convictions is affirmed. On the original proceeding, the petition for a writ of habeas corpus is granted, and the matter is remanded for resentencing.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, J.

We concur:


MALLANO, P. J.


JOHNSON, J.

13